# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* WELLMAN, Minors.

UNPUBLISHED
August 9, 2018

No. 341444
Genesee Circuit Court
Family Division
LC No. 15-131796-NA

Before: RIORDAN, P.J., and K. F. KELLY and BOONSTRA, JJ.

PER CURIAM.

Respondent-mother appeals by right the trial court's order terminating her parental rights to her minor children, AEW and CAW, under MCL 712A.19b(3)(g) (failure to provide proper care and custody) and (j) (reasonable likelihood that the child will be harmed if returned to the parent). We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

In January 2015, petitioner, the Department of Health and Human Services (DHHS), petitioned the trial court for the termination of respondent's parental rights based on allegations that respondent had molested (and had exchanged inappropriate photographs with) an unrelated minor child[1] who had been living in her home and that a criminal investigation was under way. The trial court authorized the petition and the children were removed from respondent's care and placed with their father.[2] Respondent pleaded no-contest to the allegation in the petition that she had exchanged inappropriate photographs with the minor in question; the trial court accepted the plea and took jurisdiction over the children. Respondent was subsequently charged with first-degree criminal sexual conduct (CSC-I) and ultimately pleaded no contest to second-degree criminal sexual conduct (CSC-II). After her release from jail, respondent was given a Sexual Offender Treatment Program Initial Assessment (sex offender assessment) by John Neumann, LMSW and a psychological evaluation by Dr. Harold Sommerschield to assess whether she

---

[1] The victim was 13 years old at the time the sexual abuse occurred and 14 years old at the time the petition was filed.

[2] At the time of the termination proceedings, the children continued to reside with their father, who is not a party to these proceedings.

-1-

posed a risk to her children. Petitioner filed a supplemental petition seeking the termination of respondent's parental rights, incorporating the disposition of her criminal case.

At several dispositional hearings, respondent argued that the trial court could resolve the issue by granting the children's father sole legal and physical custody with suspended parenting time for respondent. Although petitioner, respondent, and the children's lawyer-guardian ad litem (L-GAL) agreed to resolve the matter through a custody order, the children's father did not agree because respondent could later seek to change custody or increase her parenting time. The parties and the children's father never reached an agreement.

At the termination hearing, the trial court found that statutory grounds for termination of parental rights existed based on respondent's CSC conviction, the fact that the victim was a minor child who had been living with her, and the fact that Neumann testified that respondent was at the "high end of moderate risk of recidivism," did not accept responsibility for her actions, viewed herself as the victim, and was unable to function appropriately and responsibly around minor children. Neumann further noted that respondent had sexually abused the victim while CAW was in the same bed. The trial court also heard testimony from a Child Protective Services (CPS) supervisor, Melissa Oginsky, that after respondent was criminally charged, but before her conviction, respondent messaged the victim on Facebook, asking her to change her story and to not tell anyone what had occurred, and blaming her for respondent going to prison. The trial court found that the statutory grounds listed above had been proven by clear and convincing evidence.[3]

With regard to the children's best interests, the trial court noted that respondent had attended parenting time visits and had demonstrated appropriate behavior during the visits. The trial court found that a bond existed between respondent and both children. Nonetheless, the trial court found that the risk to the children's safety outweighed this bond, noting that the victim was in therapy and had expressed suicidal ideation, and that respondent had no empathy for the victim. The trial court concluded:

> The Court also must, with respect to the trial court's best interest determination, place a focus on the children rather than on the parent; and, quite frankly, when this Court placed that focus on the children, the children are unfortunately in a situation where their mother committed a sex offense; that sex offense and the situation has led to her being a registered sex offender. The Court is not satisfied, through the testimony of Mr. Neumann, that mother has properly addressed or could ever address the situation that she created, which put a child at risk of harm, that continues to put that child, the victim, at risk of harm. The

---

[3] The trial court found that the statutory ground for termination found in MCL 712A.19b(3)(n) (parent convicted of one or more listed crimes and continuing relationship would be harmful to the child) had not been proven by clear and convincing evidence; although there was clear and convincing evidence that respondent had been convicted of a listed crime (CSC), the trial court did not find that petitioner had proven by clear and convincing evidence that a continuing relationship would be harmful to respondent's children.

Court can consider the impact of that—of that child's—the impact mother created with that child and the concerns that I have for her own children; and that was the testimony of—of John Neumann.

The Court would also reference, under that aspect, the testimony of a veteran CPS supervisor, who indicated that alarming [sic] was the thirteen-year-old child, who was victimized, and thirteen-year-old child who this Court is referencing in John Neumann's testimony, was groomed for the activities, sexual activities that took place. . . .

The Court also would note that there was post-criminal activity being discovered, contact between [respondent] and the victim; and there was testimony that the victim in this communication was being blamed by [respondent] for the fact that this was happening, for the fact that it had happened and for the fact that she was—she, the victim, was somehow to be blamed that [respondent] was going to be charged criminally and could lose her freedom as a result of the testimony of the victim. The Court finds that very, very troubling, very, very disturbing, very, very damaging to a minor child; and, quite frankly, I don't know that that child will ever recover from what's been brought to her by the activities of [respondent].

The Court then, under the statutory best interest factors, under the Child Custody Act, the Court would find that it is in the best interest, far beyond the preponderance of the evidence, to terminate mother's parental rights. The Court is also satisfied that, under the best interest factors, that the Courts have directed the trial court to consider, under a neglect proceeding seeking termination that I've also referenced, the Court is satisfied far beyond preponderance of the evidence that it is in the best interest of these minor children that mother's parental rights be terminated. And, based upon the proofs, the law as the Court has just stated and the factors, the Court is going to find that it is in the best interest of these minor children for the mother's parental rights to be terminated.

This appeal followed.

## II. STATUTORY GROUNDS

Respondent argues that the trial court erred by finding that the statutory grounds for termination found in MCL 712A.19b(3)(g) and (j) had been proven by clear and convincing evidence. We disagree. "In order to terminate parental rights, the trial court must find by clear and convincing evidence that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been met." *In re VanDalen*, 293 Mich App 120, 139; 809 NW2d 412 (2011). We review for clear error the trial court's finding that a ground for termination has been established. MCR 3.977(K); *In re Rood*, 483 Mich 73, 90-91; 763 NW2d 587 (2009) (opinion by CORRIGAN, J.). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re BZ*, 264 Mich App 286, 296-297; 690

NW2d 505 (2004). "Appellate courts are obliged to defer to a trial court's factual findings at termination proceedings if those findings do not constitute clear error." *Rood*, 483 Mich at 90.

Here, the trial court terminated respondent's parental rights under MCL 712A.19b(3)(g) and (j), which, at the time of the termination proceedings, provided:

> (3) The court may terminate a parent's parental rights to a child if the court finds, by clear and convincing evidence, 1 or more of the following:

> * * *

> (g) The parent, without regard to intent, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.[4]

> * * *

> (j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.

Respondent argues that the trial court clearly erred by finding that she failed to provide proper care and custody for her children, because the children were in the care of their father and she had repeatedly offered to allow him sole physical and legal custody. However, a trial court is not forbidden to terminate the rights of a parent merely because the children are safely living elsewhere. See, e.g., *In Re Medina*, 317 Mich App 219, 233-235; 894 NW2d 653 (2016). Indeed, whenever the state is concerned that a parent should not be entrusted with the care and custody of his or her children, "the state has the authority—and the responsibility—to protect the children's safety and well-being." *In re Sanders*, 495 Mich 394, 421-422; 852 NW2d 524 (2014). Further, the children's father opposed resolving the termination case by simply awarding him custody, noting that respondent could later ask for a modification in custody or parenting time. The fact that the children were living safely with their father does not detract from the danger respondent poses to them if they were ever to be returned to her care through custody proceedings or if the father were to become unavailable to care for the children. The risk that respondent would fail to provide proper care and custody was well-established by her poor prognosis and risk of recidivism as found in her sex offender assessment as well as by evidence of respondent's poor judgment, lack of boundaries, lack of responsibility and empathy, and poor

---

[4] MCL 712A.19b(3)(g) has been amended, effective June 12, 2018. See 2018 PA 58. Under the new version of the statute, termination is appropriate if "[t]he parent, although, in the court's discretion, financially able to do so, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age." MCL 712A.19b(3)(g) as amended by 2018 PA 58 (emphasis added).

insight into her own issues as found in her psychological evaluation. We find respondent's argument unpersuasive.

Additionally, insufficient income and lack of appropriate housing can support termination under MCL 712A.19b(3)(g). See *In Re Gonzalez/Martinez*, 310 Mich App 426, 432-433; 871 NW2d 868 (2015). Respondent reported to a service provider that she typically could not keep a job longer than three months, and was unemployed at the time of trial. Oginsky reported concerns about respondent's inconsistent housing; respondent had had multiple residences during the pendency of the proceedings, and had refused to disclose the name of the person with whom she currently resided or allow a DHHS employee to inspect her housing. Given that respondent's housing conditions and unstable work conditions did not improve after her release from incarceration, respondent's actions did not demonstrate that she could provide a stable home for the children.

Respondent also argues that there was no likelihood that she would harm her children and that the trial court therefore erred by finding that MCL 712A.19b(3)(j) was satisfied. We disagree. The results of respondent's psychological evaluation and sex offender assessment suggested that the children risked serious harm if returned to respondent's home. Psychological evaluations of a parent are relevant and probative of the person's future ability to parent. *In re Johnson*, 142 Mich App 764, 766; 371 NW2d 446 (1985). Respondent's sex offender assessment stated that respondent "has poor boundaries, parameters[,] and judgment," noting that respondent, an adult, believed she had a romantic relationship with the 13-year old victim. Furthermore, respondent sexually abused the victim while her youngest child was in the same bed. Neumann opined that, even after completing her criminal sentence, respondent was at the high end of a moderate risk of recidivism. Furthermore, he did not believe that counseling would help resolve respondent's issues.

Furthermore, "how a parent treats one child is certainly probative of how that parent may treat other children." *In re AH*, 245 Mich App 77, 84; 627 NW2d 33 (2001) (citation omitted). Again, respondent was convicted of CSC-II as a result of her admitted sexual contact with an unrelated minor living in her residence. Dr. Sommerschield's psychological evaluation stated that respondent is "very impaired in her ability to analyze problems and find solutions to her problems. She will be very impaired in her ability to perceive consequences regarding her behavior. Her poor analytical ability and her defensiveness regarding her involvement with [CPS] are potential problems regarding her risk to re-offend." Additionally, although respondent had completed sexual-offender-specific counseling in May 2017, Dr. Sommerschield recommended both sexual abuse counseling and psychological counseling when he evaluated her in August and September 2017, indicating that he did not believe that respondent's prior counseling had been sufficient to resolve her issues. At trial, respondent indicated that she was not then receiving any therapy. In sum, the trial court did not clearly err by concluding that, based on respondent's conduct and capacity, there was a reasonable likelihood that the children would be harmed if returned to respondent's care. MCL 712A.19b(3)(j).

For these reasons, the trial court did not clearly err by concluding that termination was warranted under MCL 712A.19b(3)(g) and (j).

### III. BEST-INTEREST DETERMINATION

Respondent argues that the trial court also erred by determining that termination of her parental rights was in the children's best interests. We disagree. This Court reviews for clear error the trial court's best-interest determination. *In re Olive/Metts*, 297 Mich App 35, 40; 823 NW2d 144 (2012).

"Once a statutory ground for termination has been proven, the trial court must find that termination is in the child's best interests before it can terminate parental rights." *Olive/Metts*, 297 Mich App at 40. When considering best interests, the focus is on the child, not the parent. *In re Moss*, 301 Mich App 76, 87; 836 NW2d 182 (2013). "[W]hether termination of parental rights is in the best interests of the child must be proved by a preponderance of the evidence." *Id*. at 90. "The trial court should weigh all the evidence available to determine the child's best interests." *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014). The trial court may consider such factors as "the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home . . . ." *Olive/Metts*, 297 Mich App at 41-42 (citations omitted). Other factors that the trial court can consider include the parent's visitation history with the child and the children's well-being while in care. *White*, 303 Mich App at 714.

Respondent argues that the trial court gave insufficient weight to the bond between her and the children. As stated, the trial court acknowledged this bond. However, the strength of the bond between the child and the parent is only one factor for the court to consider. See *White*, 303 Mich App at 714. The trial court also considered that at the time of the termination hearing, the children had been living with their father and grandmother for quite some time. The children's bond with their father and paternal grandmother was strong. The trial court also noted that respondent's actions had resulted in damage to her relationship with the children and her absence from their lives. Further, although respondent argues that the trial court did not adequately weigh her successful parenting time visits, the record is clear that trial court did consider and give weight to respondent's appropriate behavior during parenting time. In fact, the trial court stated that the successful visitations caused the court to have some hesitation, but that ultimately the court was required to make a decision focused on the children's best interests. A parent's visitation history is only one factor for the court to consider. See *White*, 303 Mich App at 714.

The trial court was clear that it considered the record as a whole in reaching a conclusion about the children's best interests, weighing the bond between respondent and her children and her appropriate parenting time visits against other factors, such as respondent's poor judgment and deficient parenting ability and the threat of harm that respondent posed to her children. Respondent was convicted of a sexual crime involving a minor child residing in her household. There was sexual contact on more than one occasion and in the presence of her youngest child. Respondent's crime caused significant harm to the victim. The testimony of Neumann and Oginsky supported a finding that respondent lacked empathy for the victim, and Oginsky stated her additional concern that respondent would have the same lack of empathy for her own children. Neumann did not believe that respondent could provide the children with guidance, structure, and direction. He testified that a continuing bond with respondent could be harmful to the children. Dr. Sommerschield reported that respondent's poor analytical ability and

defensiveness were potential problems in relation to her risk to reoffend. The trial court also noted that respondent had recently tested positive for cocaine, was not providing any support to the children, and had not provided evidence of stable, appropriate housing for the children. Meanwhile, the children's father provided guidance, stability, food, and shelter, and provided for all the children's needs. The trial court considered the children's need for permanency and finality, as well as the fact that respondent's contact could be harmful to the children. The trial court did not clearly err by finding that the children's need for safety, permanency, and stability outweighed respondent's desire to parent.[5]

The trial court did not clearly err when it determined by a preponderance of the evidence that respondent posed a risk of harm to the children, and that termination of respondent's parental rights would provide the children with permanency and finality, notwithstanding the bond that existed between respondent and the children. For these reasons, the trial court did not clearly err by concluding that the termination of respondent's parental rights was in the best interests of the children.

Affirmed.


/s/ Michael J. Riordan
/s/ Kirsten Frank Kelly
/s/ Mark T. Boonstra

---

[5] Respondent also argues that the L-GAL agreed in April 2017 that termination was not in the children's best interests. However, it is clear from her argument at the termination hearing that the L-GAL's position had shifted by that time. Specifically, the L-GAL was "infuriated" by respondent's drug use, and stated that the children did not need "a liar and a drug user making legal decisions for them."